UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMANDA HULL,

    Plaintiff,

v.                         Case No.

ARCHER WESTERN CONSTRUCTION, LLC,
A FOREIGN LIMITED LIABILITY COMPANY,
and THE WALSH GROUP LTD, INC.,
A FOREIGN FOR PROFIT CORPORATION,

    Defendants.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

    Plaintiff, AMANDA HULL ("Hull" or "Plaintiff"), by and through her undersigned counsel, hereby files this Complaint against Defendants, ARCHER WESTERN CONSTRUCTION, LLC ("Archer Western") and THE WALSH GROUP LTD, INC. ("The Walsh Group")(collectively "Defendants"), and alleges as follows:

**INTRODUCTION**

1. This is an action for damages and equitable relief for violations of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq., the Florida Whistleblower Act ("FWA"), Fla. Stat. § 448.101 et seq., and for workers' compensation retaliation pursuant to Fla. Stat. §440.205, et seq.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this case arises under federal law, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b), as the events giving rise to this action occurred in this district.

4. All administrative prerequisites to filing suit have been satisfied or excused.

## PARTIES

5. At all times material to this action, Plaintiff, Amanda Hull, was a resident of Clearwater, Florida, and was employed by Defendants from February 16, 2022, until her termination on February 10, 2025.

6. At all times material to this action, Defendant, Archer Western Construction, is a limited liability corporation conducting business in Florida and is a member of The Walsh Group.

7. At all times material to this action, Defendant, The Walsh Group, is a corporation conducting business in Florida, which operates through its subsidiaries, including Archer Western.

8. At all times material to this action, Plaintiff was an "employee" of Defendants as defined by the FMLA, the FWA, and §440.205.

## FACTUAL ALLEGATIONS

6. Plaintiff was hired by Defendants as an Administrative Assistant.

2

7. Her responsibilities included managing payroll and onboarding new employees.

8. Plaintiff received minimal training for her role and often worked without adequate support.

9. In the course of onboarding employees, Plaintiff discovered that Defendants were engaged in unlawful hiring practices, including the hiring of workers who were not authorized to work in the United States using false documentation, and the rehiring of employees under different names with inconsistent, suspicious, or false documentation.

10. Approximately 4-6 weeks into her employment, Hull noticed that one new hire looked familiar, so she looked at previous new hires and found his picture on an ID issued under a different name and by a different state.

11. Hull made copies of both IDs and reported it to her supervisor, Dan Horvath, saying that she could not process this new hire because of the discrepancy with the two IDs.

12. When Plaintiff objected, Mr. Horvath told Plaintiff to process the new hire notwithstanding that the invalid documentation showed that the individual was not authorized to work in the United States, and was explicitly instructed by Mr. Horvath to proceed with the hire.

13. Mr. Horvath had Plaintiff shut the door and told her she had to process the hire because the company needed the help.

14. Based on this conversation, Plaintiff believed that she would be terminated if she did not process the new hire, so she did.

15. This became a regular occurrence and Plaintiff documented each instance where a new hire presented differing identities because it appeared they were not authorized to work in the United States.

16. Plaintiff experienced anxiety and stress because of the role she was being told to play in processing employees with inadequate or false identification.

17. Defendants were aware that they were hiring workers who were not authorized to work in the United States and employees often joked about it.

18. While Plaintiff was on medical leave in September 22, 2022, Juan Ariel Molina-Salles, an employee of Defendants who was not legally authorized to work in the United States, tragically struck and killed Pinellas County Sheriff's Deputy Michael Hartwick using Defendants' equipment.

19. This event caused Plaintiff emotional distress due to her belief that Defendants knew they were hiring employees who were not authorized to work in the United States, Defendants' dismissal of her objection to this practice, and her role in processing the new hires per her supervisor's orders.

20. When she returned to work in October of 2022, Plaintiff and another employee agreed that they would not process any more new hires if they had any question about their immigration status.

21. In or around August 2023, Plaintiff met with Tom Beckowitz, Regional Operations Manager.

22. During that meeting, Plaintiff reiterated the complaints she had previously made to Mr. Horvath regarding the Defendants' hiring of employees

who were not authorized to work in the United States and advised Mr. Beckowitz of the response she had received from Mr. Horvath.

23. Mr. Beckowitz was concerned and had Plaintiff speak with Human Resources at The Walsh Group, during which Plaintiff repeated her story.

24. Plaintiff also told Defendants' Human Resources professionals about the folder she kept detailing the inconsistent and conflicting identifications provided by individuals who were employed by Defendants.

25. On September 6, 2023, Plaintiff met with Defendants' outside legal counsel about the death of Deputy Hartwick.

26. Immediately following this meeting, Mr. Horvath questioned Plaintiff about her conversation with legal counsel and was very concerned about what she had told them.

27. Following this meeting, Plaintiff experienced retaliatory actions by her supervisor, including being assigned additional duties without promotion, being required to perform demeaning tasks, and being socially ostracized.

28. Mr. Horvath asked Plaintiff to help the Equipment Manager and required her to do extra paperwork.

29. On or about March 20, 2024, Mr. Horvath informed Plaintiff she was being terminated for "lack of work," despite her having processed seven new hires that same day.

30. When Plaintiff complained to The Walsh Group Human Resources that she thought this was a retaliatory termination, her termination was rescinded and she returned to work on April 15, 2024.

31. After she returned to work, Mr. Horvath largely ignored Plaintiff unless he had extra work to assign her.

32. In June 2024, two officers served Plaintiff at her home with a subpoena from the Department of Homeland Security related to Defendants' employment practices.

33. Upon becoming aware that she had been subpoenaed, Mr. Horvath again repeatedly asked Plaintiff questions about the subpoena and telling her that everything they did was legal.

34. On or about June 20, 2024, Plaintiff testified truthfully about her role in processing I-9 forms with falsified documentation, over her objection, pursuant to her supervisor's instructions.

35. Upon questioning from Mr. Horvath, Plaintiff disclosed to him the questions she was asked and informed him that she had told the truth about the Defendants' unlawful practice of hiring employees not authorized to work in the United States.

36. This caused Mr. Horvath to resumed his retaliatory behavior.

37. Mr. Horvath told Plaintiff she could not take her vacation time in September 2024 unless she found someone to cover her duties, which she did despite the fact that it was not the employee's responsibility to find coverage.

38. When the time off was approved, it was on the condition that Plaintiff could not take any additional time off during the holidays, which was not how other employees were treated.

39. In September of 2024, Plaintiff was given the responsibility of handling safety equipment and safety compliance with no additional compensation.

40. By this point, Plaintiff was responsible for managing hiring, timesheets, payroll, checks, equipment, and safety, despite not being originally hired for most of these tasks or given additional compensation.

41. On or about October 7, 2024, in advance of Hurricane Milton, Mr. Horvath attempted to prevent Plaintiff from taking home a light plant she had been offered to use as a generator along with several other employees.

42. On or around October 18, 2024, Mr. Horvath told Plaintiff that she needed to teach a harassment training to all of the crews the following Tuesday and that, since she took the light plant home, that would be her compensation.

43. Plaintiff did not attend or teach that training as she was not qualified to do so and believed Mr. Horvath was simply further retaliating and harassing her.

44. On or around October 22, 2024, Plaintiff was denied the opportunity to work from home while sick despite similarly situated employees being permitted to do so.

45. In or around November, 2024, Mr. Horvath continued to require more and more additional tasks of Plaintiff, including running errands off hours and cleaning out offices.

46. The company moved offices in December of 2024.

47. On or around December 6, 2024, Mr. Horvath informed employees that they were responsible for moving their own items to the new office.

48. For Plaintiff, this meant she was responsible for moving paperwork and office equipment.

49. On December 12, 2024, Plaintiff fell and injured her back while moving office equipment.

50. Plaintiff wished to go to urgent care for her injury but was told by Mr. Horvath that she would have to wait for further instructions.

51. While awaiting these instructions, Mr. Horvath repeatedly contacted Plaintiff, asking her to perform work duties.

52. Despite being in severe pain, Plaintiff was forced to wait 6 days to seek treatment.

53. On or about January 10, 2024, the Leave Specialist in Chicago contacted Plaintiff to see why she was not working and told Plaintiff she would send her the FMLA paperwork.

54. On or about January 15, 2024, the Leave Specialist called back and told Plaintiff that she was all set and did not need to worry about the paperwork because she had already been approved for 12 weeks of FMLA leave.

55. On or about January 15, 2024, Plaintiff also received paperwork from the Leave Specialist stating she was approved for a leave of absence and was eligible for 12 weeks of FMLA leave.

56. Plaintiff did not hear anything else from the Leave Specialist again until February 10, 2024, when she missed a call from her, and subsequently

8

received an email at 5:57pm stating that "today is the deadline for submitting the required medical documentation to support your request for leave or your return to work with accommodations."

57. On or about February 14, 2024, while on medical leave and awaiting back surgery, Plaintiff was informed via FedEx that she was terminated effective February 10, 2025 and that it was considered a voluntary separation of employment due to a failure to provide medical documentation to support the leave of absence.

58. Plaintiff's termination is due to her protected activities, including objecting to and testifying about Defendants' unlawful hiring actions, filing for worker's compensation, and taking FMLA leave.

59. Since her termination, the Department of Homeland Security has remained in contact with Plaintiff and has listed her as a witness in multiple matters, requiring time and expense, as well as causing her additional stress.

60. Due to her termination and loss of health insurance, Plaintiff has been unable to undergo the surgery needed to treat her back from the on-the-job injury she sustained.

## COUNT I
## FMLA INTERFERENCE

61. Plaintiff re-alleges and incorporates by reference paragraphs 1-7 and 44-60 as if fully set forth herein.

62. Plaintiff was an eligible employee under the FMLA, having been employed by Defendants for at least 12 months and having worked at least 1,260 hours of service during the 12-month period preceding her need for leave.

63. Plaintiff's medical condition constituted a serious health condition under the FMLA, necessitating a period of incapacity and subsequent medical treatment.

64. Plaintiff provided Defendants with appropriate notice of her need for leave due to her serious health condition, both verbally and through her claim for workers' compensation and related request for a leave of absence.

65. Plaintiff's Leave of Absence Approval states that she is eligible for 12 weeks of FMLA leave.

66. Defendants were aware or should have been aware of Plaintiff's serious health condition and her need for medical leave.

67. Defendants failed to provide Plaintiff with the necessary information regarding her rights and obligations under the FMLA, including failing to furnish any FMLA paperwork or informing her of her entitlement to FMLA leave.

68. Defendants terminated Plaintiff due to her absences, which were protected absences under the FMLA.

69. Defendants' actions constituted interference with, the restraint of, and denial of Plaintiff's rights under the FMLA, in direct contravention of 29 U.S.C. §2615(a)(1).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants as follows:

    a.    Awarding Plaintiff all wages, salary, employment benefits, and other compensation denied or lost to her by reason of Defendants' FMLA violations, in an amount to be proven at trial;

    b.    Awarding Plaintiff interest on the amount found due at the prevailing rate;

    c.    Awarding Plaintiff liquidated damages in an amount equal to the sum of the actual damages and interest, as provided for under the FMLA;

    d.    Ordering Defendants to reinstate Plaintiff to her former position or an equivalent position with full benefits and seniority rights, or alternatively, awarding front pay in lieu of reinstatement;

    e.    Awarding Plaintiff reasonable attorneys' fees, expert witness fees, and other costs of this action as provided by the FMLA;

    f.    Granting such other and further relief as the Court deems just and proper.

## COUNT II
## FMLA RETALIATION

70.    Plaintiff re-alleges and incorporates by reference paragraphs 1-7 and 44-60 as if fully set forth herein.

71.    Plaintiff engaged in activity protected under the FMLA by taking leave for her serious health condition.

72.    Defendants retaliated against Plaintiff for exercising her rights under the FMLA by terminating her employment during her FMLA-protected leave because of her use of protected leave.

73. As a result of Defendants' retaliatory actions, Plaintiff has suffered, and continues to suffer, substantial losses, including loss of income, benefits, and other privileges of employment, as well as significant emotional distress and other damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants as follows:

a. Awarding Plaintiff all wages, salary, employment benefits, and other compensation denied or lost to her by reason of Defendants' FMLA violations, in an amount to be proven at trial;

b. Awarding Plaintiff interest on the amount found due at the prevailing rate;

c. Awarding Plaintiff liquidated damages in an amount equal to the sum of the actual damages and interest, as provided for under the FMLA;

d. Ordering Defendants to reinstate Plaintiff to her former position or an equivalent position with full benefits and seniority rights, or alternatively, awarding front pay in lieu of reinstatement;

e. Awarding Plaintiff reasonable attorneys' fees, expert witness fees, and other costs of this action as provided by the FMLA;

f. Granting such other and further relief as the Court deems just and proper.

## COUNT III
## FLORIDA WHISTLEBLOWER ACT RETALIATION

74. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 60 as if fully set forth herein.

75. Defendants had a practice of hiring workers not authorized to work in the United States and approving I-9 paperwork for workers who were not authorized to work in the United States.

76. This is a violation of Immigration Reform and Control Act of 1986 and Fla. Stat. 448.09 and 448.095.

77. Plaintiff engaged in protected activity under the Florida Whistleblower Act by objecting to and reporting illegal hiring practices to her employer and participating in a government investigation and providing testimony pursuant to a subpoena.

78. Defendants retaliated against Plaintiff by subjecting her to adverse employment actions, including termination, in violation of Fla. Stat. § 448.102.

79. As a result of Defendants' unlawful conduct, Plaintiff has suffered damages, including lost wages, benefits, and emotional distress.

WHEREFORE, Plaintiff prays that this Court issue an Order awarding her the following relief:

a. An injunction restraining continued violation of this act;

b. Reinstatement of Plaintiff to the same position held before her termination, or to an equivalent position or front pay instead of reinstatement;

c. Reinstatement of full fringe benefits and seniority rights or front pay instead of reinstatement of full fringe benefits and seniority rights;

d. Compensation for lost wages, benefits, and other remuneration;

e. Any other compensatory damages allowable at law, including but not limited to unliquidated damages;

f. Punitive damages;

g. Pre- and post-judgment interest;

h. Her reasonable attorney's fees, court costs, and expenses; and

i. All other relief ordered by the Court or jury.

## COUNT IV
## WORKERS' COMPENSATION RETALIATION

80. Plaintiff re-alleges and incorporates by reference paragraphs 1-7 and 44-60 as if fully set forth herein.

81. Plaintiff fell at work and suffered an injury.

82. Plaintiff submitted a workers' compensation claim related to this injury.

83. Defendants retaliated against Plaintiff by terminating her employment while on leave for this work-related injury.

84. These actions are a violation of Fla. Stat. §440.205.

WHEREFORE, Plaintiff prays that judgment be entered in Plaintiff's favor and against Defendants and that the Court award:

a. An injunction restraining continued violation of this act;

    b.    Reinstatement of Plaintiff to the same position held before her termination, or to an equivalent position or front pay instead of reinstatement;

    c.    Reinstatement of full fringe benefits and seniority rights or front pay instead of reinstatement of full fringe benefits and seniority rights;

    d.    Compensation for lost wages, benefits, and other remuneration;

    e.    Any other compensatory damages allowable at law;

    f.    Punitive damages;

    g.    Pre- and post-judgment interest;

    h.    Her reasonable attorney's fees, court costs, and expenses; and

    i.    All other relief ordered by the Court or jury.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Michelle Erin Nadeau
Ryan D. Barack
Florida Bar No. 0148430
rbarack@employeerights.com
Jackie@employeerights.com
Michelle Erin Nadeau
Florida Bar No. 0060396
mnadeau@employeerights.com
Jackie@employeerights.com
Kwall Barack Nadeau PLLC
304 S. Belcher Rd., Suite C
Clearwater, Florida 33765
(727) 441-4947
(727) 447-3158 Fax
Attorneys for Plaintiff